JOHN GAUCHE, Plaintiff in Error, v. FREDERICK MAY-ER, impleaded with Walter Wright, Defendant in Error.

ERROR TO ST. CLAIR.

A party may maintain trespass, if he has at the time of the act, such a title as draws after it a constructive possession.

A had placed goods with an auctioneer for sale, reserving to himself the right to resume possession at his pleasure, the auctioneer not having any claim to or charge upon such goods: *Held*, that A had a right of action in trespass against a sheriff for making a levy upon those goods as the property of another, the sheriff having been notified of the facts before the levy.

PLAINTIFF in error filed his declaration against Mayer and Wright in trespass for carrying away certain articles of china-ware and crockery, and other merchandise, fully described therein. Wright filed his plea of general issue. Mayer justified as sheriff under an execution issued from Cook county, in favor of Wright and against the property of Nolin, Belt and Galbreath, which said execution he had levied upon the goods, etc., etc., claimed by plaintiff in error in his declaration, as the goods of Nolin, one of the defendants in the said execution.

Plaintiff filed two replications to said special plea ; one denying the execution, and the other averring, that the said property was the property of plaintiff, and not of Nolin.

Upon trial, jury found defendants guilty, and assessed damages at $276.64. The plaintiff's counsel discharged the said defendant Wright.

Defendant moved for and obtained a new trial.

Before second trial, plaintiff dismissed the case as to Wright.

Upon the trial, plaintiff proved that in the spring of 1859, the merchandise in question was given to Nolin & Belt, auctioneers in the city of Belleville, to sell on commission. Some months before the goods were levied upon, Nolin & Belt sold out to one Bates, who was also carrying on the auctioneering business. Nolin & Belt, at the time of selling out, informed plaintiff that his goods had been left in the store, and plaintiff made arrangements with Mr. Bates to sell them on commission. Nolin, at the time of the levy, was in the store, having still some things of his own in the store, and he told the sheriff, that the goods levied upon were the goods of Gauche. Bates stated, that about 20th July, 1859, about two weeks before the levy, an agent of Gauche came over and asked him whether he would take the commission of

goods on the same terms that Nolin & Belt had had them; that he agreed to it, and he was to sell the goods at auction or otherwise, to the best advantage, for ten per cent. commission. The goods levied upon as invoiced by him at half the original prices, amounted to $319. He told the sheriff that the goods were not Nolin's, but belonged to plaintiff at St. Louis; they were apart under the counter, and he repeatedly informed the sheriff that they were commission goods, and the sheriff said he did not know, nor did he care, or words to that effect. He could, as he understood it, return the goods at any time, and Gauche could have called for them at any time. The old sign of the firm of Nolin & Belt was still painted over the door, but Bates had ordered the painter to paint the names of the new firm, but the painter had disappointed him. The goods were sold by the sheriff.

Defendant proved that Mayer was acting sheriff, produced execution, and also the return thereon; to the reading of which return, the plaintiff objected, but objection was overruled.

Case was by consent tried by court, who took the case under advisement, for the purpose of examining witness Bates again, which the court did, while plaintiff's counsel was not in court, at a subsequent day, and gave verdict for defendant, overruled motion for a new trial, and gave judgment for costs.

The plaintiff assigns the following errors: That the court admitted improper evidence; admitted evidence improperly; refused motion for new trial; and gave judgment for defendant and not for plaintiff.

GUSTAVUS KŒRNER, for Plaintiff in Error.

J. B. UNDERWOOD, for Defendant in Error.

BREESE, J. To entitle a person to maintain an action of trespass, he must, at the time when the act, constituting the trespass, was done, either have the actual possession in him of the thing which is the object of the trespass, or else he must have a constructive possession, by reason of the right or title to the thing being actually vested in him, such title or right, drawing after it, a constructive possession. If the general owner parts with his possession, and the bailee, at the time when the injury was committed, has a right exclusively to use the thing, the inference of a constructive possession is rebutted, and the general owner cannot maintain trespass, his possession being in reversion only. The action is founded

on possession, or on such a title as draws after it a construc-
tive possession. What are the facts in this case? The goods
in question had been deposited by the plaintiff, a resident of
St. Louis, with the firm of Nolin & Belt, of Belleville, to sell
on a certain stipulated commission, but within no specified
time. The firm made sale of some of the goods, and having
sold out their concern to Bates, he agreed to sell the remain-
der on the same terms that Nolin & Belt had stipulated.
Soon after this sale, Bates being in possession of the goods, an
execution against Nolin & Belt was levied, by the defendant,
as sheriff of St. Clair county, on them, he being informed at
the time, both by Nolin and by Bates, that they were the
goods of the plaintiff, and not the property of Nolin & Belt,
or of either of them. The goods were taken by the sheriff
and sold, and this action of trespass brought by the owners.

On the trial, it was proved by Bates, that he had agreed
with the plaintiff, some weeks before the levy, to sell these
goods at auction for a commission of ten per cent. He states
he understood the contract with the plaintiff to be, that he
could return the goods at any time, and that plaintiff could
have called for them at any time. At a separate examination
of this witness by the court, on the following day, the court
stating, that his decision would turn on the nature of the con-
tract the witness had made with the plaintiff, the witness
stated, there was nothing said specially about the keeping
the goods, or the right of plaintiff to call for them at any
time—he took the goods on general commission to sell for the
plaintiff. This the court deemed sufficient evidence, to rebut
the claim of a right of possession in the plaintiff, and accord-
ingly decided that he could not maintain his action of tres-
pass.

It is undoubtedly true, that Bates, the bailee of these goods,
might have maintained trespass against the defendant for tak-
ing the goods out of his actual possession—trespass being
founded on possession. But does it follow, that the real
owner might not also maintain the action? The defendant
was a wrong-doer, both as it regards the bailee, and the real
owner of the goods, though the force was actually against the
bailee's possession. The question then is, had the plaintiff,
by reason of his being the real owner of the goods, such a
constructive possession as to enable him to maintain trespass?
To answer this, we must inquire, was there any bar to his
taking actual possession? Was there any subsisting right
or claim to the goods in any other person, sufficient to over-
ride or postpone the right of plaintiff to the possession of the
goods at the time of the levy? We cannot find from the tes-

timony, that any such bar existed, or that there was anything in the way to prevent the plaintiff from taking immediate possession, at the time of the levy. The bailee sets up no claim for storage, commissions, or any lien whatever upon the goods, and according to his view of the contract, though nothing special was said about it, the plaintiff had a right to repossess himself of the goods whenever he pleased, and so had the bailee the right to return them, whenever he thought proper. The defendant is a stranger to the goods and a wrong-doer, and it does not rest with him to say, that the bailee had a lien on the goods, when the bailee disclaims any such lien, and proofs show that the bailee had no claim of any kind upon the goods.

We think then, the plaintiff being the real owner of the goods, and having the right, at the time of the levy and exportation of the goods, to have the immediate possession of them, can maintain trespass against a stranger and wrong-doer for taking them and carrying them away. The case of *Cannon* v. *Kinney*, 3 Scam. 10, and cases there cited, sustain the view we have taken of this case. It is urged, however, by the defendant, that the bill of exceptions does not purport to contain all the evidence in the cause. This court has repeatedly decided, that if the bill of exceptions does not contain all the evidence, the ruling of the court on a motion for a new trial will not be considered. This is, undoubtedly, the general rule and a salutary one; but when a record discloses the fact that the cause was tried by the court without a jury, and the judge certifies that he based his decision on one part of the testimony only, and that part is decisive of the case, this court, it would seem, could inquire into the propriety of the decision on that testimony, it being fully stated in the bill of exceptions and made the turning point of the judgment. There is no serious question made about any other point in the cause.

The judgment of the court below is reversed, and the cause remanded, with directions to award a new trial.

*Judgment reversed.*